**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| EDDIE BYRD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 5:10-CV-161 (MTT) |
| ) | |
| TYSON FOODS INC., ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## ORDER

This matter is before the Court on Defendant Tyson Foods Inc.'s Motion for Summary Judgment. (Doc. 26). For the following reasons, the motion is **GRANTED**.

### I. FACTUAL BACKGROUND

This is a retaliatory discharge action on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*, and age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*.[1]

Plaintiff Eddie Byrd, an African-American male born in 1950, was hired as a Maintenance Technician at the Defendant's Vienna, Georgia facility on February 19, 1998.

In January 2008, the Plaintiff alleged that the Maintenance Department Manager, Johnny Curtis Conley, Jr., a Caucasian male born in 1952, said "I'll send you home, boy."[2] (Doc. 34, Eddie Byrd Dep. at 98). Byrd orally reported the incident and later

---

[1] On January 19, 2011, the Court granted the Parties' Joint Motion to Dismiss With Prejudice. (Doc. 19). Thus, the only issues in this action are retaliation on the basis of race and age.

[2] The Plaintiff does not think that "white boy" or "black boy" is offensive, but did state that "boy" is offensive depending on how it is used. (Doc. 34, Eddie Byrd Dep. at 92-93).

provided a written account to the Human Resources Manager, an African-American female born in 1969.

On February 26, 2008, the Plaintiff and his former supervisor, a Caucasian male born in 1972, were engaged in a physical altercation. The Plaintiff was suspended and later terminated, but his supervisor was not punished. The Plaintiff appealed this decision through the company's Alternative Dispute Resolution Program and he was reinstated with full back pay and benefits on or about March 28, 2008.[3] When the Plaintiff returned to work, he began working for a new supervisor, Mike Holder, a Caucasian male born in 1957.

In addition to his conflicts with Conley, the Plaintiff soon experienced problems with Holder. The Plaintiff called the "Tell Tyson" hotline on April 24, 2008 to report unfair treatment by Holder and on May 7, 2008 to report discrimination by Holder and Conley. In August 2008, the Plaintiff complained to the Human Resources Manager that Conley cut his hours and forced him to work on weekends.

On September 8, 2008, Conley reassigned the Plaintiff from the day shift to the night shift. Conley claims he made the reassignment so the Plaintiff could mentor less experienced Maintenance Technicians who worked on the night shift. The Plaintiff called the "Tell Tyson" hotline the following day and expressed concerns of racial discrimination.

---

[3] The Alternative Dispute Resolution Committee consists of two management team members and three hourly team members.

On September 10, 2008, two Tyson employees, a Caucasian male born in 1976 and an African-American male born in 1969, witnessed the Plaintiff sleeping on duty.[4] These employees contacted a supervisor so he could witness the Plaintiff sleeping on duty. The supervisor then escorted the Plaintiff to human resources and he was suspended while human resources conducted an investigation into the incident.

While the Plaintiff was suspended, he called the "Tell Tyson" hotline and stated that he was unfairly suspended and that he was the oldest employee in the department. Upon completion of the investigation into the sleeping incident, the Human Resources Manager terminated the Plaintiff on September 24, 2008.[5] The Plaintiff again used the Alternative Dispute Resolution Program to appeal the decision, but the decision was affirmed.

On October 29, 2008, the Plaintiff filed an EEOC charge against the Defendant. The Plaintiff filed the Complaint on April 20, 2010. The Plaintiff primarily argues that he was not asleep and that his termination was the product of a conspiracy between Conley and Holder. The Plaintiff testified that both African-American and Caucasian employees slept on duty. Specifically, the Plaintiff testified that he saw younger, Caucasian and African-American employees sleeping on duty, but he did not report them to management. (Doc. 34-1, Eddie Byrd Dep. at 144-149). After the Plaintiff was terminated, he was told by colleagues that management had caught one of the younger,

---

[4] One of the employees captured the Plaintiff sleeping on his mobile phone, but the poor video quality makes it difficult to identify the Plaintiff.

[5] On October 13, 2008, Tyson called the Plaintiff to inform him that it had looked into his previous complaints of discrimination and found no unlawful conduct. During that call, the Plaintiff informed Tyson that former coworkers called him an "old man." The Plaintiff did not personally hear these comments or complain to management even though he was aware that he was called "old man" before he was terminated. (Doc. 34-1, Eddie Byrd Dep. at 160-162).

Caucasian employees who the Plaintiff previously had caught sleeping on duty and only told him to resume work.[6] (Doc. 34-1, Eddie Byrd Dep. at 148-149).

The Defendant alleges that it properly terminated the Plaintiff because he was sleeping on duty. The Tyson Rules of Conduct state that sleeping during scheduled hours may result in discharge after investigation and confirmation. (Doc. 27-1, at 12). The Defendant contends that since 2005 every employee caught sleeping on duty at the Vienna Facility had been terminated. The Defendant also clarified that none of the individuals who were terminated for sleeping on duty had made prior complaints of discrimination. The Defendant further argues that Conley and Holder did not know about the Plaintiff's complaints to the "Tell Tyson" hotline because this information only was provided to human resources personnel.

On April 13, 2011, the Plaintiff's Counsel filed a Motion to Withdraw. (Doc. 24). The Defendant filed its Motion for Summary Judgment the following day. On April 26, the Court granted the Motion to Withdraw and extended the response deadline to July 5. (Doc. 35). The Plaintiff did not respond to the Motion for Summary Judgment.

## II. DISCUSSION

Summary judgment must be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "A factual dispute is genuine only if 'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281

---

[6] The Plaintiff also testified that management caught an African-American male sleeping on duty and only suspended him for three days. However, this incident occurred before Conley was the Maintenance Department Manager and the Plaintiff was not sure whether there was a different policy in effect. (Doc. 34-1, Eddie Byrd Dep. at 186-88).

F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)). The burden rests with the moving party to prove that no genuine issue of material fact exists. *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d at 1224. The district court must "view all evidence in the light most favorable to the nonmoving party, and resolve all reasonable doubts about the facts in its favor." *Id.*

### A. Retaliation Based Upon Race

The Plaintiff has no direct evidence of retaliation based upon age. Rather, like most victims of alleged retaliatory discharge, he must rely on circumstantial evidence, and the framework for analyzing circumstantial evidence first applied in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to make his case. Retaliation cases interpreting the *McDonnell Douglas* test state that a plaintiff must first establish a prima facie case of retaliation, which a plaintiff can do by demonstrating that (1) he engaged in statutorily protected expression; (2) he was subsequently subjected to a materially adverse action; and (3) there was a causal link between the materially adverse action and his protected expression. *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008). The third prong requires a plaintiff to demonstrate that "the decision-makers were aware of the protected conduct, and that the protected activity and the [materially] adverse action were not wholly unrelated." *McCann v. Tillman*, 526 F.3d 1370, 1376 (11th Cir. 2008) (citation omitted). Additionally, a causal link can be severed by an "intervening act of misconduct." *Hankins v. AirTran Airways, Inc.*, 237 Fed. Appx. 513, 521 (11th Cir. 2007).

If a plaintiff establishes a prima facie case of retaliation, the burden of production, but not the burden of persuasion, shifts to the employer to articulate a legitimate, nonretaliatory reason for the employment action. *Goldsmith*, 513 F.3d at 1277. The burden then returns to the plaintiff to prove that the employer's reasons are pretextual. *Id.*

Here, the Plaintiff engaged in statutorily protected expression by alleging he was discriminated against because of his race. It is also clear that the Plaintiff's termination was a materially adverse action. However, the Plaintiff cannot establish a causal link because he has not established that either Conley or Holder knew of his protected expression. The evidence shows that information from "Tell Tyson" hotline calls only was provided to human resources personnel. Moreover, the Human Resources Manager was the decision-maker who terminated the Plaintiff. Further, the Plaintiff's sleeping on duty was an intervening act of misconduct that severed any causal link between his protected expression and his termination.

Even if the Plaintiff could establish a prima facie case, terminating the Plaintiff for sleeping on duty is a legitimate, nonretaliatory reason. The Plaintiff cannot establish pretext because he presents no evidence that the decision-maker did not honestly believe the facts upon which she relied. Indeed, the decision was affirmed upon review by the Alternative Dispute Resolution Committee. Additionally, the decision-maker terminated other employees for sleeping on duty, even though they had not complained about discrimination. The Plaintiff suggests that sleeping on duty was a widespread occurrence, but there is no evidence other than hearsay that management actually caught Caucasian employees sleeping on duty and failed to terminate them.

Accordingly, because the Plaintiff cannot establish a prima facie case of retaliation on the basis of race or, in the alternative, the Defendant articulated a legitimate, nonretaliatory reason and the Plaintiff failed to prove that reason was pretextual, the Motion for Summary Judgment must be granted on the Plaintiff's Title VII retaliation claim.

### B. Retaliation Based Upon Age

The burden shifting framework of Title VII cases has been applied to ADEA cases.[7] Retaliation claims pursuant to the ADEA based upon circumstantial evidence are analyzed under the same legal framework as Title VII retaliation claims. *Vinnett v. General Elec. Co.*, 271 Fed. Appx. 908, 913-14 (11th Cir. 2008). Here, the Plaintiff cannot establish a causal link because his protected expression on the basis of age occurred *after* he was placed on suspension for sleeping on duty and an investigation had begun. Again, even if the Plaintiff could establish a prima facie case of retaliation, the Defendant has articulated a legitimate, nonretaliatory reason and the Plaintiff cannot prove that reason was pretextual.[8]

Accordingly, because the Plaintiff cannot establish a prima facie case of retaliation on the basis of age or, in the alternative, the Defendant articulated a legitimate, nonretaliatory reason and the Plaintiff failed to prove that reason was

---

[7] In *Gross v. FBL Financial Services*, __ U.S. __, 129 S. Ct. 2343 (2009), the Supreme Court observed that "the Court ha[d] not definitively decided whether the evidentiary framework of *McDonnell Douglas Corp. v. Green* … utilized in Title VII cases is appropriate in the ADEA context." __ U.S. at __, 129 S. Ct. at 2349 n.2. However, the Eleventh Circuit, and every other circuit addressing the issue, has continued to apply the *McDonnell Douglas* test in ADEA cases.

[8] The record does not reveal whether the individual who only was suspended three days for sleeping on duty was younger than the Plaintiff or whether this event took place after the Defendant began terminating employees for sleeping on duty.

pretextual, the Motion for Summary Judgment must be granted on the Plaintiff's ADEA retaliation claim.

### III. CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment is **GRANTED**.

SO ORDERED, this the 26th day of July, 2011.

<u>S/ Marc T. Treadwell</u>
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT